IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**UNITED STATES OF AMERICA**,

   Plaintiff,            No. 6:17-cr-00186-AA
                     No. 6:19-cv-00343-AA

   v.                 **OPINION & ORDER**

**NICHOLAS ROBERT STROBEL**,

   Defendant.

AIKEN, District Judge.

   This matter comes before the Court on Defendant Nicholas Robert Strobel's Motion to Vacate or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 53. Defendant also moves for appointment of counsel. ECF Nos. 54, 67. For the reasons set forth below, the Motion under § 2255 is DENIED. Because the motion and record conclusively show that Defendant is entitled to no relief, no evidentiary hearing is required. Defendant's motion for appointment of counsel is also DENIED.

## BACKGROUND

   On February 24, 2016, Defendant was charged by criminal complaint with Receipt, Distribution, and Possession of Child Pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (a)(5). ECF No. 1. Defendant's first appearance was held on March 14, 2016 before Magistrate Judge Thomas Coffin. ECF No. 7. Attorney Bryan Lessley

was appointed to represent Defendant and Defendant was ordered detained. ECF Nos. 7, 8.

On May 30, 2017, Defendant was charged by information with a single count of Distribution of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1). ECF No. 24. On June 29, 2017, Defendant waived indictment and pleaded guilty to the information pursuant to a plea agreement with the Government. ECF Nos. 27, 28, 29, 30.

Under that plea agreement, Defendant agreed to plead guilty to the single count alleged in the information and the Government agreed that if Defendant received a sentence of at least 10 years, Defendant would not be prosecuted in the District of Montana "for charges related to the production of child pornography that are known to the USAO at the time of this agreement." Plea Agreement, at 2. ECF No. 29. The parties agreed that, for purposes of the Guidelines, Defendant's relevant conduct "includes all of the unlawful conduct detailed in the search warrants, all the child pornography traded on the internet and all the child pornography found in digital items." *Id.* The parties agreed that Defendant's base offense level was 22 with (1) a two-level enhancement for material involving a prepubescent minor; (2) a two-level enhancement for distribution; (3) a four-level enhancement for material involving sadistic conduct; (4) a two-level enhancement for use of a computer; (5) a five-level enhancement for more than 600 images; and (6) a three-level reduction for acceptance of responsibility for an adjusted offense level of 34. *Id.* at 3. The parties acknowledged that they disputed whether a five-level enhancement for a pattern of

activity involving abuse/exploitation of minors and the Government reserved the right to ask for an upward departure of five levels if the PSR writer or the Court did not apply the five-level enhancement. *Id.*

The parties agreed that the Government would recommend a sentence within the Guideline range including any upward departures or a sentence of ten years, whichever was higher. Plea Agreement, at 3. Defendant agreed that he would not request a sentence of less than ten years and Defendant reserved the right to seek a downward departure, adjustment, or variance from the applicable sentencing guideline range to a ten-year sentence. *Id.*

This Court presided over Defendant's arraignment on the information and accepted Defendant's guilty plea pursuant to the plea agreement. ECF No. 27.

On August 27, 2018, this Court sentenced Defendant to 240 months in prison and lifetime supervised release. ECF Nos. 47, 48. Defendant did not file a direct appeal of his conviction or sentence.

## LEGAL STANDARD

Under 28 U.S.C. § 2255, a federal prisoner in custody under sentence may move the court that imposed the sentence to vacate, set aside, or correct the sentence on the ground that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255(a).

To warrant relief, a petitioner must demonstrate that the error of constitutional magnitude had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht*'s harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.").

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration and emphasis in original) (quoting 28 U.S.C. § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (alteration in original, internal quotation marks and citation omitted). A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062-63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)); *see United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *Hearst*, 638 F.2d at 1194.

## DISCUSSION

Defendant brings this motion under 28 U.S.C. § 2255, alleging ineffective assistance of counsel in negotiating his plea agreement and during sentencing and that he received the wrong sentence.

### I. Ineffective Assistance of Counsel

Courts use a two-part test to determine whether a defendant has received constitutionally deficient assistance of counsel. *Premo v. Moore*, 562 U.S. 115, 121 (2011). Under this test, a defendant must prove that counsel's assistance was deficient and that the deficient performance prejudiced the defense. *Id.*; *see also Schurz v. Ryan*, 730 F.3d 812, 815 (9th Cir. 2013).

To prove the deficiency of counsel's performance, the defendant must show counsel made errors so serious that his "'representation fell below an objective standard of reasonableness'" under prevailing professional norms. *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The court must inquire "whether counsel's assistance was reasonable considering all the circumstances" at the time of the assistance. *Strickland*, 466 U.S. at 688.

In assessing whether counsel's performance was deficient, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and make every effort 'to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir.

2012) (quoting *Strickland*, 466 U.S. at 689). Ultimately, the defendant's "burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

"To satisfy the prejudice prong under *Strickland*, a defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Saesee v. McDonald*, 725 F.3d 1045, 1048 (9th Cir. 2013) (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant[.]" *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

Defendant asserts that Mr. Lessley was ineffective for (1) failing to diligently seek pretrial release; (2) failing to communicate sufficiently with Defendant about his case; (3) failing to negotiate an adequate plea agreement; (4) pressuring him to enter into the plea agreement and plead guilty to the Information; (5) failing to involve him in the presentence report process; (6) failing to object to an alleged breach of the plea agreement by the Government; (7) failing to object to the guideline enhancements; and (8) failing to argue for mitigating factors or downward departures at sentencing.

The Government has submitted an Affidavit from Bryan Lessley rebutting the allegations in Defendant's motion. ECF No. 65-1. With respect to pretrial release, Mr. Lessley affirms that he investigated the possibility of pretrial release for Defendant, including traveling to Montana to review the evidence against Defendant in that District, as well as interviewing members of Defendant's family. Lessley Aff. ¶ 4. Mr. Lessley concluded "[i]n my opinion, there was no serious likelihood that any court would release him under the statutory legal standards and I told [Defendant] so." *Id.* Mr. Lessley believed that Defendant accepted his advice. *Id.* The Court cannot find that counsel rendered ineffective assistance based on a failure to advance meritless arguments. *See Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) (so holding). On this record, the Court concludes that Defendant has not shown that Mr. Lessley was ineffective for failing to secure pretrial release.

On the issue of attorney-client communication, Mr. Lessley affirms that the Federal Public Defender timekeeping system shows that he personally met with Defendant twelve different times, spoke with him by telephone twenty times, and sent him eight emails. Lessley Aff. ¶ 6. Although Defendant complains that Mr. Lessley did not respond in writing to his letters, Mr. Lessley has provided reasonable bases for declining to put their attorney-client communications in writing, ranging from practical considerations of access and safety for incarcerated clients charged with child pornography offenses to concerns about the confidentiality of inmate phone and email systems. *Id.* at ¶ 7. "Because of all these factors, I told [Defendant], as I tell many clients, that I would generally not respond in writing to emails or letters

regarding the substance of his case and would not generally try to discuss detailed issues by phone, but that I would keep his questions so that we could discuss them in person when we met." *Id.* Defendant expressly agreed to that procedure and Mr. Lessley recounts that "in our personal meetings I discussed thoroughly and in detail every question he asked in those letters, e-mails and calls, and every other aspect of his case." *Id.* In his Affidavit, Mr. Lessley directly addresses specific instances of communication Defendant complains of in his motion. *Id.* at ¶¶ 8-15. The Court concludes that Defendant has failed to show ineffective assistance of counsel based on his communications with Mr. Lessley.

Turning to the plea negotiations, Defendant asserts that Mr. Lessley told him that he was certain the Court would agree to a ten-year sentence. Mr. Lessley denies this allegation and Mr. Lessley's affidavit is confirmed in no uncertain terms by a letter Mr. Lessley sent to Defendant on June 8, 2017 in which he told Defendant "[t]o be clear, the offer is not that you will receive ten years," but that they would be "allowed to ask the court for a sentence as low as ten years." Lessley Aff. Ex. B., at 3. Mr. Lessley also explains why, contrary to Defendant's motion, a binding plea agreement was not a viable option based on the Government's policy discouraging such agreements and the length of sentence the Government was seeking in Defendant's case. Lessley Aff. ¶¶ 17-18.

Defendant also contends that he was pressured to sign a last-minute plea agreement that was different from the one he had originally been presented with. Mr. Lessley explains that the original plea agreement had erroneously left out the

fact that the Government intended to seek a five-level enhancement for a pattern of activity involving abuse/exploitation of minors and that he and Defendant discussed the fact that the omission was likely an error based on discussions made in the course of negotiating the plea agreement. Lessley Aff. ¶¶ 19-22. Defendant and Mr. Lessley agreed that they would not raise the issue because it was favorable to their position, but that there was a genuine possibility that the Government would note the omission before the date of the plea hearing and present Defendant with a corrected agreement. *Id.* at ¶¶ 22-24. When the Government did note the issue and offered an amended plea agreement on the morning of the change of plea hearing, Mr. Lessley observed that this "was a disappointment, but not a surprise." *Id.* at ¶ 24. Mr. Lessley and Defendant discussed delaying the hearing to engage in further discussions on the enhancement, but Defendant "declined that option and wanted to proceed." *Id.* Mr. Lessley advised Defendant that he did not believe the enhancement should apply and that he would argue against it, but that "there was no way to enforce the May 30 version even though we had signed it." *Id.* at ¶ 25. Mr. Lessley denies that he made the change to include the enhancement and denies that he pressured Defendant to accept the revised plea agreement. *Id.* at ¶ 26.

The allegations in Defendant's motion contradict not only Mr. Lessley's Affidavit, but Defendant's own sworn statements during his change of plea hearing. During the change of plea hearing, Defendant was placed under oath and questioned by the Court. Plea Hr'g Tr. at 3-4. ECF No. 68. Defendant affirmed under oath that he had had "plenty of time to talk" with Mr. Lessley and that he was satisfied with

Page 9 – OPINION & ORDER

Mr. Lessley's representation. *Id.* at 5. During the plea colloquy, Defendant again testified that he had "discussed the case fully with Mr. Lessley," including speaking with him about the terms of the plea agreement and that he was satisfied with Mr. Lessley's representation. *Id.* at 7-8. During the hearing, counsel for the Government read the terms of the plea agreement into the record, including the term memorializing the parties' disagreement over the five-level pattern of activity enhancement. *Id.* at 19-26. Defendant affirmed under oath that the Government's recitation was also his understanding of the agreement. *Id.* at 26. Defendant affirmed that he had not received any promises or assurances outside of the plea agreement; that he had not been threatened, intimidated, or coerced into pleading guilty; and that his plea was made freely and voluntarily. *Id.* at 26-27. The Court thereafter accepted Defendant's guilty plea. *Id.* at 28.

In the absence of extraordinary circumstances, "allegations made in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *Muth v. Fondren*, 676 F.3d 815, 822 (9th Cir. 2012) (internal quotation marks and citation omitted). Defendant has failed to make any showing to overcome the direct contradiction between his sworn statements during the change of plea hearing and the allegations in his motion. The Court cannot find that Mr. Lessley was ineffective in the negotiation or presentation of the plea agreement.

Turning to the question of the PSR, Defendant asserts that he wanted a pre-plea PSR prepared and that he wanted a copy of the draft PSR so that he could object

to information contained in it. Mr. Lessley explained in his June 2017 letter why Defendant's request for a pre-plea PSR was late, a bad idea, and not in Defendant's interests, as well as Mr. Lessley's sound strategic reasons for not requesting one. Lessley Aff. ¶¶ 27-28, Ex. B at 3-4. Although Defendant requested a written copy of the PSR, he had already agreed with Mr. Lessley that he would not be sent physical copies of his case materials while in custody. *Id.* at ¶ 28. Mr. Lessley met with Defendant in person and they went over each paragraph of the PSR and identified the five-level enhancement as their only objection. *Id.* After that meeting, Defendant agreed that he did not need a physical copy of the PSR. *Id.* On this record, the Court concludes that Mr. Lessley was not ineffective with respect to the PSR.

Finally, Defendant asserts that Mr. Lessley was ineffective at sentencing for failing to object to Guideline enhancements; failing to object to an alleged breach of the plea agreement by the Government; and failing to argue for downward departures or present mitigating information to the Court. As Mr. Lessley points out in his Affidavit, all the relevant enhancements except for the five-level pattern of activity enhancement were specifically included in the plea agreement and had been agreed to by Defendant. Lessley Aff. ¶ 29. Mr. Lessley also believed that, except for the pattern of activity enhancement, the Guideline enhancements in the agreement were factually and legally proper and there was no basis to object to those enhancements. *Id.* at 28. Mr. Lessley cannot be found to have been ineffective based on a failure to make meritless objections.

Although Defendant asserts that Mr. Lessley did not object to the five-level pattern or practice enhancement, that allegation is contradicted entirely by the record. Mr. Lessley objected in both his written submissions to the Court, Def. Sentencing Mem. at 2-5, ECF No. 46, and during the hearing, Sentencing Hr'g Tr. 10-11, ECF No. 69. Although the Court ultimately applied the challenged enhancement, it did so over Mr. Lessley's able and vigorous objections.

Mr. Lessley did not object to the alleged breach of the plea agreement by the Government because Mr. Lessley did not and does not believe that any such breach had occurred. Lessley Aff. ¶ 32. Mr. Lessley was not ineffective for failing raise meritless arguments concerning breach of the plea agreement.

Mr. Lessley affirms that he did not make any argument for a downward departure because, as a matter of strategy, he believes that it "is generally much more productive to couch arguments under the flexible standards of § 3553(a)," than to attempt to make the same arguments under "rigid, narrow, often technical" Guidelines provisions for downward departures. Lessley Aff. ¶ 33. This is the very sort of strategic decision that attorneys are called upon to make and the Court cannot find Mr. Lessley ineffective based on that decision.

With respect to mitigating factors, Mr. Lessley sought a neuropsychological evaluation for Defendant and made extensive arguments for the application of mitigating factors in Defendant's favor. *See, e.g.*, Sentencing Hr'g Tr. 12-16; Def. Sentencing Mem. ECF No. 44. Mr. Lessley is not ineffective simply because these arguments did not yield a sentence that Defendant finds acceptable.

## II.   Certificate of Appealability

A final order in a § 2255 proceeding may not be appealed unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Slack v. McDaniel*, 529 U.S. 473 (2000), the Supreme Court explained that a certificate of appealability under § 2253(c) is warranted when a habeas prisoner makes "a demonstration that . . . includes a showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 483-84 (internal quotation marks and citation omitted). In this case, the Court concludes Defendant has failed to make the required showing and so declines to issue a certificate of appealability.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Vacate or Correct Sentence under 28 U.S.C. § 2255, ECF No. 53, is DENIED. No evidentiary hearing is necessary because the allegations in Defendant's motion, when viewed against the record, do not give rise to a claim for relief. Accordingly, Defendant's Motions for Appointment of Counsel, ECF Nos. 54, 67, are also DENIED. The Court declines to issue a certificate of appealability on the basis that Defendant has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2). Any other pending motions are DENIED as moot.

It is so ORDERED and DATED this  3rd  day of March 2022.

 /s/Ann Aiken
ANN AIKEN
United States District Judge